# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| GRETCHEN B. CARREL, on behalf of herself and all others similarly situated persons, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CAUSE NO.: 1:16-CV-130-TLS |
| MEDPRO GROUP, INC., | ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The Plaintiff, Gretchen B. Carrel, on behalf of herself and others similarly situated, has brought this class action against the Defendant, MedPro Group, Inc. (MedPro), asserting a violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2614(a)(2). This matter is before the Court on the Plaintiff's Motion to Certify Class Action on Plaintiff's FMLA Claim (Pl.'s Mot.) [ECF No. 35]. For reasons stated herein, the Court grants class certification.

## BACKGROUND

MedPro is a healthcare malpractice insurance corporation headquartered in Allen County, Indiana. (Compl. ¶ 2, ECF No. 11.) For about 14 years, the Plaintiff worked for MedPro and was subject to MedPro's Paid Time Off (PTO) policy. The policy applicable to the Plaintiff stated, in relevant part:

> Those employed on January 1 are entitled to their full PTO accrual for the year based on years of service in that year.
>
> [E]ligible . . . employees may carry over 10 PTO days per calendar year.
>
> Employees that separate employment will be paid accrued PTO only (excluding carryover).

(Kem Decl., ECF No. 42-1.) MedPro also had a policy that whenever an employee took short-term leave, including FMLA leave, the employee could not accrue PTO. (*Id.*; Pl.'s Mem. of Law in Supp. of Pl.'s Mot. 2, ECF No. 36.) The Plaintiff asserts that this latter policy violated the FMLA because, each employee was provided PTO at the beginning of the year according to MedPro's PTO policy and thus, this PTO was unlawfully "docked" whenever an employee took FMLA leave. In other words, the Plaintiff argues that the practice of withholding employees' PTO while an employee took FMLA is a violation of the FMLA because PTO was already provided to employees at the beginning of the year, pursuant to the MedPro PTO policy. Because she claims she was docked earned PTO, the Plaintiff further asserts that MedPro failed to pay her unused PTO upon her departure from the Company. (Pl.'s Reply Br. 6, n.1, ECF No. 45.)

Accordingly, the Plaintiff seeks double damages, costs, and attorney's fees, pursuant to the FMLA. (Compl. ¶ 25.) At issue here, the Plaintiff also asserts that MedPro's PTO and FMLA policies were uniformly applicable across all employees covered by the handbook and thus, numerous MedPro employees were docked PTO. Therefore, the Plaintiff seeks certification of a class related to the claims set forth in her Complaint.

## LEGAL STANDARD

Certification of a class is only proper if the class meets all of the requirements of Federal Rule of Civil Procedure 23(a) and one of the requirements of Rule 23(b). *See* Fed. R. Civ. P. 23; *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). Rule 23(a) is satisfied if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)–(4); *Kress v. CCA of Tenn., LLC*, 694 F.3d 890, 892–93 (7th Cir. 2012).

If all of these prerequisites are met, the Court must also find that at least one of the subsections of Rule 23(b) is satisfied. As relevant here, Rule 23(b)(3) is satisfied if:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>>
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>>
>> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>>
>> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); *Harper v. Sheriff of Cook Cty.*, 581 F.3d 511, 513 (7th Cir. 2009).

A plaintiff who fulfills both conditions of Rule 23 is entitled to class certification. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action."). However, Rule 23 "does not set forth a mere pleading standard"; rather, a plaintiff "must affirmatively demonstrate his compliance with the Rule [and] be prepared to prove" its requirements. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). In deciding whether Rule 23 has been satisfied, the district court undertakes "a rigorous analysis" by making the necessary factual and legal inquiries. *Id.*; *Szabo v. Bridgeport Machs., Inc.*, 249

F.3d 672, 676 (7th Cir. 2001). This analysis may require some overlap with the merits of the Plaintiff's underlying claim. *Dukes*, 564 U.S. at 351.


## ANALYSIS

The Plaintiff seeks to certify a class of individuals defined as "all current and former MedPro employees who took FMLA leave at any point since March 29, 2013[.]" (Pl.'s Mot. ¶ 11.) The Plaintiff clarifies that this class should include "only those employees who actually had their PTO docked." (Pl.'s Reply Br. 2, 5.) The Plaintiff asserts that this class has satisfied the requirements of Rule 23(a)(1)–(4) with respect to numerosity, commonality, typicality, and adequacy of representation, and has also satisfied Rule 23(b)(1)(3). Additionally, the Plaintiff requests that Matthew Elliot of Beckman Lawson, LLP be appointed counsel for the class.

The Defendant maintains that the Plaintiff has failed to satisfy the Rule 23(a) requirements. Most of the Defendant's challenges derive from the purported lack of uniformity of the Plaintiff's allegations with those of the class and the alleged individualized nature of the claims. For example, the Defendant argues that the Plaintiff's claims do not meet the commonality and typicality requirements because three different employee handbooks governed the time period at issue, while only one handbook was applicable to the Plaintiff, and MedPro employees took different periods of FMLA leave.

With respect to the Rule 23(b) requirements, the Defendant contends that the Plaintiff cannot demonstrate that there is a common question of law predominating over the class because each employee used up a different amount of PTO during his/her employment. Further, the Defendant argues that whether these employees would have used more PTO is a subjective and

individualized analysis inappropriate for class certification.

### A.      Rule 23 - Applicability

In addition to its arguments against class certification pursuant to Rule 23, the Defendant argues that Rule 23 is the wrong mechanism for an FMLA class, contending instead that the alleged class violations of the FMLA must be treated as collective actions. Though the Defendant argues this as an alternative to its argument that the Plaintiff cannot fulfill the Rule 23 requirements, the Court will first examine whether Rule 23 is, in fact, the correct method by which to analyze the remainder of the Plaintiff's Motion because whether Rule 23 applies has the potential to impact the entire analysis.

The Defendant relies upon a Northern District of Texas case in which the court pointed to the nearly identical statutory language of the FMLA enforcement provision, 29 U.S.C. § 2617(a)(2), and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), to hold that an FMLA claim on behalf of other similarly situated individuals must proceed in the same manner as an FLSA opt-in collective action. *Clary v. Sw Airlines*, No. 3:07-C-126-P, 2007 WL 4947690, at *1–2 (N.D. Tex. Dec. 17, 2007). Thus, the *Clary* court held that the Rule 23 class action is inappropriate for FMLA claims. *Id.* Furthermore, the Defendant quotes the FMLA's legislative history, arguing that the enforcement scheme of the FMLA was intended to be identical to that of the FLSA. Finally, the Defendant notes that courts interpreting the FMLA frequently track FLSA interpretations on employment-law related issues, including anti-retaliation provisions, investigative authority, available relief, and the definition of an employee.

Although the Defendant is correct that the Seventh Circuit has not weighed in on the applicability of Rule 23 to FMLA actions, courts within the Circuit have analyzed arguments

similar, if not identical, to those posed by the Defendant and rejected them. *See Butler v. Ill. Bell Tel. Co.*, No. 06-C-5400, 2008 WL 474367 (N.D. Ill. Feb. 14, 2008); *Loy v. Motorola, Inc.*, No. 03-C-50519, 2004 WL 2967069 (N.D. Ill. Nov. 23, 2004). The courts in *Butler* and *Loy* held that class violations of the FMLA must be treated as opt-out actions pursuant to Rule 23 because the statutory language of the FMLA § 2617(a)(2) does not incorporate the additional language in the FLSA expressly requiring that plaintiffs affirmatively consent to join the action by opting-in.

This Court agrees. Much like the Defendants in *Butler* and *Loy*, the Defendant argues that the FMLA § 2617(a)(2) should have the same opt-out requirement as the FLSA § 216(b). "The difference, however, is that § 216(b) contains additional language expressly requiring additional plaintiffs consent to join the action." *Butler*, 2008 WL 474367, at *3. Thus, "[b]ecause the plain language of the FMLA is silent as to the appropriate vehicle for an action to proceed on the behalf of others," this Court will apply Rule 23. *Loy*, 2004 WL 2967069, at *3. "In the absence of a direct expression by Congress of its intent to depart from the usual course of trying 'all suits of a civil nature' under the Rules established for that purpose, class relief is appropriate . . . ." *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979) (quoting Fed. R. Civ. P. 1).

Because Rule 23 is the correct mechanism by which to proceed with the analysis of the Plaintiff's Motion, the Court now turns to whether the Plaintiff has demonstrated the requirements of Rule 23.

**B.     Rule 23(a)**

*1.     Numerosity—Rule 23(a)(1)*

To meet the numerosity requirement, the class must be so large "that joinder of all members is impracticable." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); *see also* Fed. R.

Civ. P. 23(a)(1). "[T]here is no magic number needed to establish numerosity." *Donovan v. St. Joseph Cty. Sheriff*, No. 3:11-CV-133-TLS, 2012 WL 1601314, at *2 (N.D. Ind. May 3, 2012) (citation omitted). Accordingly, a plaintiff need not plead or prove the exact number of class members to establish numerosity under Rule 23(a)(1). *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989). Moreover, a court may make common sense assumptions to determine numerosity. *See Arreola v. Godinez*, 546 F.3d 788, 797 (7th Cir. 2008) (finding numerosity after the plaintiff introduced evidence that "support[ed] a much larger estimate").

In this case, though the Plaintiff does not identify an exact number of class members, she maintains that this number is around 100 or more. (Pl.'s Mem. of Law in Supp. of Pl.'s Mot. 4; Pl.'s Reply Br. 4.) In reaching this number, the Plaintiff relies upon the Defendant's discovery responses, which she attests admit that at least 168 employees took FMLA leave during the time period at issue. (*See* Pl.'s Mem. Of Law in Supp. of Pl.'s Mot. 4.)

Although in the context of its commonality argument, the Defendant contends that the class size is smaller because the Defendant's interrogatory responses cover a broader group of employees than those who were docked PTO—for example, the Defendant claims that "19 employees whose FMLA leave was intermittent rather than a block of time did not see any changes to their available PTO." (Def.'s Opp. 8, ECF No. 50.) In other words, the Defendant argues that employees who took intermittent FMLA leave did not receive a reduction in PTO, and thus, many employees do not fall within the parameters of the class. In response, the Plaintiff points to the Defendant's supplemental discovery responses, which the Plaintiff claims reveal that approximately 100 employees have had their annual allotment of PTO reduced as result of taking FMLA leave. (Pl.'s Reply Br. 4, Ex. B.) Thus, the Plaintiff asserts that, at minimum, the

class size will be the nearly 100 employees who were docked PTO, if not the full set of 168 employees who took FMLA leave.

The Defendant's arguments contest the exact number of employees who will formulate the class. However, because a plaintiff need not plead or prove the exact number of class members to establish numerosity under Rule 23(a)(1), the good faith estimate of 100 employees, based on the Plaintiff's understanding of the Defendant's revised discovery responses, is sufficiently large to satisfy the requirements of Rule 23(a). *Vergara v. Hampton*, 581 F.2d 1281, 1284 (7th Cir. 1978) ("[D]ifficulty in determining the exact number of class members does not preclude class certification."); *See Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969) (holding that 40 "is a sufficiently large group to satisfy Rule 23(a)" where joinder was otherwise impracticable).

Accordingly, class size of 100 persons, coupled with the hindrance of pursuing and adjudicating separate suits, supports a finding that the Plaintiff has satisfied the numerosity requirement.

## 2.      *Commonality—Rule 23(a)(2)*

Subsection (a)(2) requires the presence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Seventh Circuit has clarified that, "[a]lthough a court need only find a single common question of law or fact, the mere occurrence of all plaintiffs suffering as a result of a violation of the same provision of law is not enough. The claims must depend upon a common contention that is capable of class-wide resolution," *Bell v. PNC Bank, Nat'l. Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015) (citation omitted), which "means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one

stroke," *Dukes*, 564 U.S. at 350. Specifically in regard to employer policies, "[w]here the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014); *see also Keele*, 149 F.3d at 594 ("A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2). Common nuclei of fact . . . manifest where . . . the defendants have engaged in standardized conduct towards members of the proposed class . . . .") (internal citation and quotations omitted).

The Plaintiff and the putative class members were all MedPro employees who were subject to the same uniformly applied PTO policy. The Plaintiff alleges that this PTO policy resulted in the unlawful docking of earned PTO whenever employees took their federally-entitled FMLA leave. In essence, the Plaintiff's common question boils down to whether or not the Defendant's PTO policy violated the FMLA.

The Court finds that the commonality requirement is satisfied. Whether the Defendant's PTO policy violated the FMLA presents a common question of law. *Keele*, 149 F.3d at 594 (holding that commonality was met where defendants "engaged in standardized conduct towards members of the proposed class"). Indeed, the case will end if the Defendant's PTO policy was in compliance with the FMLA. "[T]he class will prevail or fail on the answer to that question, not on the subjective beliefs of any" of the employees. *Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2015 WL 7016343, at *6 (N.D. Ind. Nov. 10, 2015).

The Court is not persuaded by the Defendant's arguments disputing the presence of commonality. The Defendant maintains that whether its PTO policy violated the FMLA cannot be answered in "one stroke" because the policy was not the same for all employees and was not applied in the same manner for two reasons. First, the Defendant argues that the Plaintiff's

FMLA claim is based on one handbook, but the handbook, and consequently the PTO policy, was updated twice during the relevant time period. Thus, the MedPro employees in the Plaintiff's proposed class were subject to different policies. This dissimilarity, the Defendant contends, impedes the resolution of the Plaintiff's proposed common question because the Court will have to interpret different versions of the applicable PTO policy for each individual class member.

However, at no point does the Defendant assert that these updates substantially changed MedPro's policy of docking an employee's provided PTO whenever the employee took FMLA leave. Nor does the Defendant argue that the class members subject to the revised policy were exempt from the same general docking practice—in other words, even though the MedPro policy was changed and updated, it may nevertheless have stood in violation of the FMLA because it continued to dock employees of PTO. Thus, the Plaintiff's common inquiry remains the same: whether MedPro's PTO policy, even as updated, violated the FMLA by docking PTO for employees who took PTO leave. Any "complexity of proof . . . problem" is an issue the Plaintiff "will have to address in presenting [her] case on the merits, but it does not negate the predominance of the central, common question." *Bell*, 800 F.3d at 375. Moreover, Rule 23 does not "require[] that *every* question be common." *Suchanek*, 764 F.3d at 756.

Second, the Defendant argues that its PTO policy was applied differently depending on the duration of FMLA leave an employee took, and in fact, a variety of employees' PTO was unaffected by their FMLA usage. For example, employees took intermittent rather than long-term FMLA leave, received adjustments to their PTO in the calendar year *after* taking FMLA leave, and/or were not docked PTO due to "administrative oversight."

The Defendant's argument fails to recognize that the Plaintiff is seeking class certification solely for those employees who had their PTO docked. (*See* Pl.'s Reply Br. 2

("After all, the class will include only those employees who actually had their PTO docked."), 5 ("[T]he class will include only those employees who actually had their PTO docked.").)[1] For certification, the Court does not require proof that every member of the class was harmed by the Defendant's conduct. *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) ("How many (if any) of the class members have a valid claim is the issue to be determined *after* the class is certified."); *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 823 (7th Cir. 2012) ("[T]hat some class members' claims will fail on the merits if and when damages are decided [is] a fact generally irrelevant to the district court's decision on class certification."); *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009) ("[A] class will often include persons who have not been injured by the Defendant's conduct . . . . Such a possibility or indeed inevitability does not preclude class certification.") (citations omitted).

Accordingly, the legality of MedPro's PTO policy—whether it generally docked PTO for employees who took FMLA—is the root issue and is common to each class member. Ultimately, the Defendant's challenge, regarding how MedPro's policy actually affected each putative class member and the subjective and complicated nature of such an inquiry, goes to the merits of the suit and does not abrogate commonality. *See Martin v. City of Fort Wayne*, No. 1:15-CV-384-TLS, 2016 WL 5110465, at *6 (N.D. Ind. Sept. 20, 2016) ("Whether the Plaintiff can ultimately prove the existence of an unconstitutional policy or custom is an issue for trial or a properly supported motion for summary judgment."). This Court holds that the Plaintiff's injury, and those of the class she would like to represent, all derive from a single policy promulgated by the

---

[1] In the Plaintiff's opening brief, the Plaintiff asserts that, "[a]ccording to the information produced by MedPro in discovery . . . at least 168 employees took FMLA and were subject to the same docking policy to which Ms. Carrel was subject." (Pl.'s Mem. of Law in Supp. of Pl.'s Mot. 4). Following the Defendant's response brief, the Plaintiff clarifies the phrase "subject to the same policy," affirming that the Plaintiff is seeking class certification only for those employees who were actually docked PTO.

Defendant, specifically the Defendant's PTO policy. The answer to the question of whether the

Defendant's PTO policy violated the FMLA is central to the validity of each of the claims

against the Defendant. Accordingly, the Plaintiff has "demonstrated commonality by asserting

that a uniform employment practice"—the Defendant's PTO policy—violated the FMLA. *Chi.*

*Teachers Union, Local No. 1*, 797 F.3d at 440.


### 3.     *Typicality—Rule 23(a)(3)*

Under Rule 23's typicality requirement, the issue is whether "the named representatives'

claims have the same essential characteristics as the claims of the class at large." *De La Fuente v.*

*Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). This question—whether claims are

typical of those of the class members the Plaintiff represents—is "closely related to the

commonality inquiry." *Keele*, 149 F.3d at 595. The Seventh Circuit has summarized the

typicality analysis as follows:

> A claim is typical if it arises from the same event or practice or course of conduct
> that gives rise to the claims of other class members and . . . [it is] based on the
> same legal theory. Even though some factual variations may not defeat typicality,
> the requirement is meant to ensure that the named representative's claims have the
> same essential characteristics as the claims of the class at large.

*Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (internal quotation marks and

citation omitted); *see also De La Fuente*, 713 F.2d at 232 ("The typicality requirement may be

satisfied even if there are factual differences between" class member's claims, so long as those

claims "arise[] from the same event or practice or course of conduct that gives rise to the claims

of other class members and his or her claims are based on the same legal theory.").

The Plaintiff alleges that her claims are based on the same MedPro policy that gives rise

to the claims of other class members. Consequently, all of the claims are based on the same legal

theory—that MedPro's uniform practice or conduct violated the FMLA. Similar to the concerns raised in the commonality analysis, the Defendant maintains that the Plaintiff's claims are atypical of the class because: (1) the Plaintiff did not take FMLA leave in the same year as the termination of her employment, and thus, the Defendant's PTO policy was applied to her in a different manner than those employees who took FMLA leave and PTO in the same year their employment ended; and (2) the Plaintiff was subject to only one version of the handbook policy, which was subsequently updated for the other employees.

The Court disagrees with the Defendant's arguments. Again, the Defendant's challenges go to the merits of the suit and specifically how MedPro's PTO policy was applied, resulting in variations of damages among the class members. This challenge does not defeat typicality because the Plaintiff's injury, and the injuries of the putative class members, "arise[] from the same practice of the Defendant[] and is based on the same legal theory." *Mitchell*, 2015 WL 7016343 at *7. Once a determination is made regarding the legality of MedPro's PTO policy, the parties can turn to contesting how this policy affected each class member. Thus, the presence of individualized questions regarding damages does not prevent certification. *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("[T]he fact that damages are not all identical across all class members should not preclude class certification."); *Suchanek*, 764 F.3d at 756 ("It is routine in class actions to have a final phase in which individualized proof must be submitted."). Because the Plaintiff's claim has the same essential characteristics as the claims of the proposed class, the typicality requirement is satisfied.

***4.      Adequacy of Representation—Rule 23(a)(4)***

Rule 23(a)(4) requires that a class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between the named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). To be an adequate representative, a plaintiff must have a sufficient stake in the outcome of the case to ensure zealous advocacy and must not have antagonistic or conflicting claims with other class members. *Rosario*, 963 F.2d at 1018. A plaintiff must also show that their legal counsel is experienced and competent. *Id.*

The Complaint shows that the Plaintiff alleges she was subject to the same standard conduct as the class that she seeks to certify. There is no indication that the Plaintiff does not have a sufficient stake in the outcome, or that her claims would be antagonistic to or in conflict with the claims of other class members seeking damages for being subject to a policy that violated the FMLA. Therefore, the Court finds that the requirements of Rule 23(a)(4) have been met in this case. Later in this Opinion, the Court will discuss the adequacy of the Plaintiff's counsel to represent the interests of the class, which is governed by a separate subsection of Rule 23.

**C.      Rule 23(b)**

Because the Rule 23(a) requirements are met, the Court must next assess whether class action is appropriate under at least one of the provisions of Rule 23(b). The Plaintiff asserts that the maintenance of a class action is appropriate under Rule 23(b)(3).

Rule 23(b)(3) applies to most classes seeking monetary relief. The two overarching requirements are that: (1) common issues predominate and (2) a class action is the superior method for resolving the controversy. Fed. R. Civ. P. 23(b)(3); *Szabo*, 249 F.3d at 676. The Supreme Court has explained that the predominance and superiority requirements of Rule 23(b)(3) serve to limit class certification to cases where "a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (quotations and citation omitted). The Court examines each of these requirements in turn.

### 1.     *Predominance*

The Supreme Court has described predominance in broad terms, explaining that the Rule 23(b)(3) inquiry "trains on the legal or factual questions that qualify each class member's case as a genuine controversy," with the purpose being to determine "whether a proposed class is sufficiently cohesive to warrant adjudication by representation." *Id*. at 623, 625. This "requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1191 (2013). In other words, a plaintiff must show that common evidence, as opposed to evidence that is individual to each class member, could suffice to make out the alleged violation. *Messner*, 669 F.3d at 818. Though the predominance analysis "call[s] for caution when individual stakes are high and disparities among class members [are] great," *Amchem*, 521 U.S. at 625, the Seventh Circuit has also warned that, "[t]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather it is to select the method best

suited to adjudication of the controversy fairly and efficiently," *Bell*, 800 F.3d at 376 (citing *Amgen*, 113 S.Ct. at 1191). "In conducting this analysis, the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Id.* (citations and quotation marks omitted).

The Defendant warns the Court that it will be required to examine the circumstances surrounding each employee's use of their PTO, including whether an employee would have used any extra PTO and/or used their carryover PTO into the next year. Individualized discovery in the form of deposition testimony will be necessary because there are dozens of reasons that class members did not use all of their available PTO and even forfeited carryover PTO hours, and because it is speculative to ascertain whether each class member would have taken additional PTO hours had they been available. Thus, the Defendant contends that individual issues of whether each class member suffered from interference (or was retaliated against after taking FMLA leave) will predominate.

However, causation issues, which here are actually issues concerning what damages, if any, each class member has actually suffered pursuant to the PTO policy applied in his/her own case, "will not predominate over common liability issues." *Mitchell*, 2015 WL 7016343 at *9; *see also Chi. Teachers Union, Local No. 1*, 797 F.3d at 442; *Pella Corp. v. Saltzman*, 606 F.3d 391, 394–95 (7th Cir. 2010) (noting that even though class members still must prove individual issues of causation and damages, this does not prevent class certification). This is because the Defendant's potential liability for having in place a policy that violated the FMLA is a common question that can be decided for all proposed class members, even if the extent of damages among them varies. The operative facts regarding liability are common to all individuals who took FMLA leave and were docked PTO. The overriding legal issue is whether the Defendant

had a policy, practice, or custom in place that unlawfully accounted for the docking of earned

PTO when an employee took FMLA leave. *Streeter v. Sheriff of Cook Cty.*, 256 F.R.D. 609, 614

(N.D. Ill. 2009) ("When a proposed class challenges a uniform policy, the validity of that policy

tends to be the predominant issue in the litigation."); *Martin*, 2016 WL 5110465, at *7 ("The

nature and constitutionality of that practice will predominate over individual issues."). When

deciding the merits of this case, if there was no such docking policy, "then all of the class

members' claims would fail in unison." *Bell*, 800 F.3d at 378.

In other words, it makes no difference to the class claim how much PTO each employee

used or would have used. *Id.* at 379. "These would be issues for the portion of the suit where

individual damages are assessed . . . ," *id.*, because commonality of damages is not required in a

class action suit, *In re IKO Roofing Single Prods. Liab. Litig.*, 757 F.3d 599, 602 (7th Cir. 2014);

*see also Buter*, 727 F.3d at 801 ("It would drive a stake through the heart of the class action

device . . . to require that every member of the class have identical damages."). In fact, "[i]t is

routine in class actions to have a final phase in which individualized proof must be submitted."

*Suchanek*, 764 F.3d at 756. In *Bell*, the Seventh Circuit dealt with a similar issue, ultimately

holding:

> If the class prevails in demonstrating that [the employer] had an unofficial policy or
> practice that required employees class-wide to work off-the-clock overtime hours, scores
> of separate trial might be necessary to determine which class members were actually
> adversely affected by the policy and if they were, what loss each class member sustained.
> At least it will not be necessary in each of those trials to determine whether [the
> Defendant] had an illegal policy of denying pay for off-the-clock work.

*Bell*, 800 F.3d at 379–80. Similarly here, though separate trials (or individual depositions) may

be necessary to determine which class members were actually adversely affected by the

Defendant's PTO policy, it would not be necessary to determine if the policy was illegal in the

first place, because this issue would already be determined for the entire class. *See Butler*, 727

F.3d at 801 ("If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification.").

Finally, as explained earlier, the Plaintiff does not need to prove that every member of the proposed class was harmed before the class can be certified. "A class will often include persons who have not been injured by the defendant's conduct, but this possibility, or indeed inevitability, does not preclude class certification." *Bell*, 800 F.3d at 380 (citations omitted). In fact, "[i]f very few members of the class were harmed, that is an argument not for refusing to certify the class but for certifying it and then entering a judgment that would largely exonerate" the Defendant. *Suchanek*, 764 F.3d at 757–58 (internal citations omitted).

Accordingly, the significant and common issue of whether the Defendant's policy violated the FMLA outweighs individualized causation and/or damages issues, and so, the predominance requirement of Rule 23(b)(3) has been met.

## 2.    *Superiority*

Under the superiority requirement, a class action should proceed under Rule 23(b)(3) only if it is superior to other methods for adjudicating the claims of the members of the proposed class. Considerations relevant to the superiority of the class action device include:

> (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."

Fed. R. Civ. P. 23(b)(3)(A)–(D).

The Court concludes that a class action is superior to other methods for the adjudication of the proposed class claims. There is no suggestion that any class member has started separate litigation on these issues or that the federal district court in the Northern District of Indiana is a less desirable or appropriate forum than another. The Court can devise solutions to address problems presented by varying amounts of damages among class members, and the personal notice and opt-out requirements of Rule 23(b)(3) will further protect the interests of those who qualify as class members. *Carnegie v. Household Int'l Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues."). Additionally, the costs of initiating and prosecuting individual lawsuits, which is the alternative method of resolution, would likely dwarf the potential recoveries. This would be uneconomical and inefficient for the potential class members and an unnecessary waste of judicial resources. Nothing in the record before the Court suggests that class members would have additional claims under any statute or law such that they would have an interest in individually controlling their own separate action. Bearing in mind that a principal purpose of class certification is to save the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical manner, the Court finds that certification of the proposed class is appropriate.

**D.      Appointment of Class Counsel**

Rule 23 requires that the Court certifying a class also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B) & 23(g). Class counsel must fairly and adequately represent the interests of the

class. Fed. R. Civ. P. 23(g)(4). In appointing class counsel, the Court must consider the following:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."

Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(1)(B).

Here, attorney Matthew Elliott establishes that he is capable of fairly and adequately representing the interests of the class. He has performed the investigation that led to the discovery of the class claims. (*See* Pl.'s Mem. of Law in Supp. of Pl.'s Mot. Ex. D.) He also summarizes his education experience as well as his work in litigating a class action through state and federal court. *Id.* Moreover, this Court has already approved Mr. Elliott to conditionally bring a collection action on Ms. Carrel's FLSA claim. [*See* ECF No. 32].

### E.      Revisions to the Class Notice

According to Federal Rule of Civil Procedure 23(c)(1)(B), the Court, in granting certification, must define the class period, the class, and the class claims and issues. The Defendant contests several portions of the Plaintiff's draft notice, including these issues.

### 1.      *The Class Period*

The Defendant contends that only employees who began FMLA leave after March 30, 2013, should receive notice because MedPro identified in its discovery responses all current and former employees who took FMLA leave since March 29, 2013—the maximum limitations

period. However, the Plaintiff correctly points out that if an employee was in the middle of FMLA leave on March 30, 2013, and if the employee's PTO was docked for any days thereafter, the employee should be included in the class.

In regard to the date closing the class period, as the Defendant pointed out in its arguments against class certification, the relevant PTO policy changed multiple times as the employee handbook went through updates during the relevant time period. The Defendant claims that the June 21, 2016, handbook materially changed the language regarding PTO accrual, so the class should close on that date. As this Court has already explained, consideration of this Motion is not appropriate to resolve arguments regarding the merits of the case, including whether MedPro's policy, as it changed, violated the FMLA. The Plaintiff has put forth an argument that MedPro's PTO policy continues to violate the FMLA through the date of this suit, including June 21, 2016, and requests that the class be certified so that this issue can be determined on the merits for all class members. Accordingly, a class period beginning on March 30, 2013, and spanning the remaining duration of MedPro's PTO policy, as allowed by the statute of limitations, is appropriate for certification. As this case proceeds into the merits, the Defendant can put forth an argument that its June 21, 2016, policy does not violate the FMLA such that it is not liable for any damages after that date.

### 2.    The Definition of the Class

The Defendant also seeks to amend the definition of the class to "employees who did not accrue PTO during their FMLA leave." (Def.'s Opp. 17.) The Plaintiff argues that this amendment promotes MedPro's theory of the case that PTO was earned throughout the year, instead of the Plaintiff's contention that MedPro's PTO policy provided PTO at the beginning of

the year. The Plaintiff instead suggests that the class definition be amended to "All current or former MedPro Group, Inc. employees who took any FMLA leave after March 30, 2013, and whose annual allotment of PTO was reduced by taking such leave." (Pl's Reply Br. 11.)

Because the Defendant maintains that its policy did not "reduce" or "dock" PTO and so, the use of these terms is inaccurate, the Court holds that the class is defined as follows: **All current or former MedPro Group, Inc. employees who took FMLA leave after or through March 30, 2013, and whose annual allotment of PTO was adversely affected by taking such leave.** The claims of this class are that MedPro's PTO policy violated the FMLA.

### 3.        *Other Revisions*

The Court declines to go through each contested portion of the Plaintiff's proposed Notice without the opportunity to discuss the Notice with the parties. Accordingly, the Court includes here general determinations, and requests that the parties attend a conference to finalize the Notice, per the Court's instructions below.

In general, MedPro seeks to include in the class Notice references to "participation" or "involvement" with the litigation. The Plaintiff contends that class members will only be required to accept or object to any settlement, or accept the results of a judgment, and therefore, the Defendant's phrasing is included solely to deter employees from joining the action. However, the class members may be subject to discovery, including depositions, to determine their individualized damages. Accordingly, revisions to include reference in the Notice to this impeding discovery are warranted.

MedPro also proposes adding language regarding its defenses of the case to the Notice. However, these revisions inappropriately seek to turn the class Notice into a mini-brief on each

party's position. Instead, this Court holds it is adequate to include MedPro's position as follows: "MedPro denies Ms. Carrel's allegations. MedPro believes that its PTO policy complies with the FMLA."

Regarding this Court's role in the Notice, the Court directs the parties to use the Plaintiff's more neutral language, as follows: "Because you may be a member of a class of plaintiffs whose rights may be affected by this litigation, this Notice is being sent to you. This Notice is not to be understood as an expression of any opinion by the Court as to the merits of any claims or defenses of either side in this litigation so that you may make appropriate decisions as to what steps you may take in relation to this lawsuit."

MedPro additionally seeks to add language to the Notice to distinguish it from the earlier FLSA notice sent to certain MedPro employees. The Court holds that the following distinguishes the Notice appropriately: "You may have received or heard of a notice of collective action related to the case that was sent to MedPro employees in October 2016. This Notice is different."

Additional remaining issues will be discussed during the forthcoming conference with the Court.

**F.      Timing Concerning the Issuance of the Class Notice**

With respect to the time of notification, the Defendant seeks a stay of this ruling or, in the alternative, a delay in publishing the Notice, pointing out that the Plaintiff's Complaint seeks class certification for four separate claims and therefore the probable "stringing out" of notices (should the Court certify these classes) is inefficient and disrupts MedPro's business. Moreover, one of the notices already sent to some MedPro employees concerns a conditionally certified FLSA "opt-in" class, and the Defendant claims that its employees are likely to become confused

by two separate processes. In contrast, the Plaintiff seeks notification as soon as possible, arguing that the FLSA opt-in process is different and should not "hold up" the Notice in this FLMA class certification. Furthermore, the Plaintiff contends that the pool of class members in the other State Law Class Certification Claim [ECF No. 46], which was not ripe for decision from this Court at the time of the parties' briefing on this Motion, is unlikely to be common with the class members of this current Motion.

The Court notes that since the parties' briefing on the timing concerning the Notice, the Plaintiff's Motion for Class Certification on its State Law Claims has been fully briefed, subject to the Court's ruling on the Defendant's pending Motion for Leave to File Surreply [ECF No. 55]. Accordingly, a stay on this decision is inappropriate at this time, as the Court has already conditionally certified the Plaintiff's FLSA action, the Plaintiff has asked for class certification on the only other outstanding claim,[2] and discovery on these claims is now complete.

Regarding the Defendant's request to delay Notice, "[a]lthough Rule 23 does not specify any timetables, notice is generally issued promptly after certification." *Tylka v. Gerber Prods. Co.*, 182 F.R.D. 573, 579 (N.D. Ill. 1998) (first citing *Harman v. Lyphomed, Inc.*, No. 88 C 0476, 1989 WL 6558, at *1 (N.D. Ill. Jan. 25, 1989); then citing Manual for Complex Litigation, 3d § 30.211 (1995)); *Beale v. EdgeMark Fin. Corp.*, No. 94-CV-1890, 1995 WL 631840, at *2 (N.D. Ill. Oct. 23, 1995) (holding that notice "generally should be sent as soon as possible after certification of the class"). In some cases, circumstances may require a special timetable because

---

[2] In total, Plaintiff's Complaint requests four separate classes. The status of these requests is as follows: Count II of the Plaintiff's claim was dismissed [ECF No. 31] on August 18, 2016; this Order will resolve the Plaintiff's request for class certification on the FMLA issue (Count III); this Court has already conditionally certified the Plaintiff's FLSA action (Count IV); and the remaining request—the Plaintiff's State Law Class Certification Claim (Count I)—is ripe for this Court to adjudicate.

the Court is forced to balance competing interests of whether one party may be harmed by the notice, and whether the class will be harmed by a delay. *See Beale*, 1995 WL 631840, at *2 (citing 7B Wright et al., Federal Practice and Procedure §§ 1786, 1788 (2d ed. 1987).

In this case, the Court finds no compelling testimony or argument which would support a conclusion that the Defendant will suffer harm or disruption by issuing Notice on this class certification. At minimum, the concerns regarding disruption and confusion to its employees articulated by the Defendant do not appear to be so egregious as to outweigh the interests of the Plaintiff, especially since the Plaintiff maintains that, if class certification is granted on the state law claims (the Plaintiff's only other pending motion for class certification), the Defendant's *former* employees will receive Notice—an entirely different group of people and who do not currently work at the Defendant's facility.

In regard to the Defendant's argument that judicial efficiency will be jeopardized, this Court borrows the reasoning set out by another district court:

> Just as class action defendants may have an interest in avoiding multiple suits, so too, the Court has as powerful interest in judicial economy. Since the Court has already spent several months deciding the issue of certification, it would be a waste of judicial resources to have certified the class only to then exercise jurisdiction simply over one class member, absent compelling cost issues or dramatic harm to either party.

*Beale*, 1995 WL 631840, at *5.

## CONCLUSION AND ORDER

The Plaintiff has satisfied the requisite elements of Rule 23(a)(1)–(4), Rule 23(b)(3), and Rule 23(g). Accordingly, the Court GRANTS the Plaintiff's Motion to Certify Class Action on Plaintiff's FMLA Claim [ECF No. 35]. The Court appoints Attorney Matthew Elliot as Class Counsel. The Court confirms the in-person conference for June 21, 2017, at 10:00 AM, to discuss the remaining terms of the Notice of Certification.

SO ORDERED on April 26, 2017.

s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT