UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| GRETCHEN B. CARREL, on behalf of herself and others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CAUSE NO.: 1:16-CV-130-TLS |
| MEDPRO GROUP, INC., | ) ) | |
| Defendant. | ) ) | |

**OPINION AND ORDER**

This matter is before the Court on the Plaintiff's Motion for Final Approval of Class-Wide Settlement of Family and Medical Leave Act Claim [ECF No. 87] and Motion for Attorney Fees and Costs on FMLA Claim [ECF No. 75]. The Plaintiff moves for a final order approving the Settlement Agreement and Full and Final Release [ECF No. 70-1], entered into between the Named Plaintiff Gretchen B. Carrel, on behalf of herself and the Settlement Class, and the Defendant MedPro Group, Inc. For the reasons stated herein, the Court finds that the Settlement Agreement is fair, reasonable, and adequate.

**BACKGROUND**

The Plaintiff, on behalf of herself and others similarly situated, filed suit against her former employer, Defendant MedPro Group, Inc., alleging that the Defendant engaged in a policy that violated the Family Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601, by reducing employees' Paid Time Off (PTO) when an employee took FMLA leave.

On October 12, 2016, the Plaintiff Gretchen B. Carrel sought class certification on her FMLA claim at issue in this matter [ECF No. 35]. On April 26, 2017, the Court granted the motion and certified the FMLA claim for the following class:

> All current or former MedPro Group, Inc. employees who took FMLA leave after or through March 30, 2013, and whose annual allotment of PTO was adversely affected by taking such leave.

[ECF No. 57]. After the Court granted the Plaintiff's Motion for Class Certification, the parties reached a proposed settlement that would resolve all claims in this case. On August 11, 2017, the Plaintiff filed a Motion for Preliminary Approval [ECF No. 70] of the class-wide settlement of the FMLA claim, as well as the Settlement Agreement and Full and Final Release [ECF No. 70-1]. The Settlement requires the Defendant to pay $2,000 to the Plaintiff as an incentive award, $72,330.78 in attorney's fees and litigation expenses, and the amounts included in Exhibit A of the Settlement, which were calculated as follows:

Class Members were divided into two groups: (1) Class Members who used all of their PTO in the same year that their PTO was reduced as a result of taking FMLA (Settlement Class I); and (2) Class Members who did not use all their PTO in the same year that their PTO was reduced as a result of taking FMLA (Settlement Class II). The anticipated recovery for the members of Settlement Class I is 1.75 multiplied by their hourly rate of pay and the number of hours their PTO was reduced. The anticipated recovery for members of the Settlement Class II is 1.5 multiplied by their hourly rate of pay and the number of hours their PTO was reduced.

The Court granted preliminary approval [ECF No. 73] on November 6, 2017, and in connection with the preliminary approval, the Court ordered that class members be sent a notice of the proposed settlement, which included a sixty-day cut-off date to opt out of the class or to object to the proposed settlement. The Court also confirmed Matthew C. Elliott as Class Counsel

for the Class Representative and the Class.

The Court conducted a Fairness Hearing on March 21, 2018 [ECF No. 85], to consider: (i) the fairness, reasonableness, and adequacy of the settlement; (ii) the contents of the Final Order of Approval of Settlement; and (iii) the application of Class Counsel for attorney's fees and costs.

**DISCUSSION**

Pursuant to Rule 23, the Court will evaluate the notice provided to the class members, the adequacy of the settlement agreement, and the propriety of the attorney's fees and the additional payment to the Named Plaintiff.

**A.      Notice**

Rule 23 requires that the Class Members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Reasonable notice is required to all class members who would be bound by a proposed settlement. Fed. R. Civ. P. 23(e)(1).

As directed by the Court (Order ¶ 12(b), ECF No. 73), the Plaintiff attests that a Class and Settlement Notice [ECF No. 74] was mailed to all class members on November 15, 2017, via U.S. Postal Service, first class mail. Individual notice, by mail, to all reasonably known class members is sufficient in the usual case. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015) (citing *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 174-75 (1974)); *see also* 7B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 1797.6 (3d ed.) (collecting cases). Because the class members are current or former

employees of the Defendant, and thus the addresses provided by the Defendant are likely to be current, first class mail is sufficient here. Thus, the Court finds that due process and the notice requirements of Rule 23 have been satisfied.

In addition to the notice provided to the class members, the Defendant has complied with the notification requirements of the Class Action Fairness Act, 28 U.S.C. § 1715, and adequately notified the requisite Federal and State Agencies. [ECF No. 86].

B.     **Adequacy of the Settlement Agreement**

A district court must scrutinize and evaluate a class action settlement to determine whether it is "fair, reasonable, and adequate." *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 634 (7th Cir. 2011) (quoting Fed. R. Civ. P. 23(e)(2)). In making these determinations, the court considers the strength of a plaintiff's case compared to the defendants' offered settlement amount; the likely complexity, length, and expense of the litigation; the amount of opposition to settlement among affected parties; the opinion of competent counsel; and the stage of the proceedings and the amount of discovery completed at the time of settlement. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

In considering the strength of the Plaintiff's case as compared to the settlement amount, the court must quantify "the net expected value of continued litigation to the class by estimating the range of possible outcomes." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346-47 (N.D. Ill. 2010); *Synfuel*, 463 F.3d at 653. While a high degree of precision cannot be expected in valuing a litigation, a ballpark valuation must be made. *See Eubank v. Pella Corp.*, 753 F.3d 718, 727 (7th Cir. 2014); *see also Reynolds v. Beneficial Nat'l Bank*, 288

F.3d 277, 285 (7th Cir. 2002). As Plaintiff notes in her briefing, FMLA allows plaintiffs to recover lost wages, with interest. *See* 29 USC § 2617(a)(1)(A)(i). An additional amount, equal to the first, is available as liquidated damages unless the employer can prove that its violation was in good faith. *Id*. at 2617(a)(1)(A)(iii). In this case, the lost wages are equivalent to the value of the PTO hours that a given class member was docked, calculated by taking the number of hours the member lost and multiplying it by their wage. Thus, the absolute maximum recovery in this case would be twice the value of the PTO hours, which represents both the actual and liquidated damages available under the statute.

However, the class would require lengthy and expensive additional litigation to achieve the absolute maximum recovery. The parties would likely need to address dispositive motions, and even a trial, to resolve the "good faith" issue necessary for liquated damages. The Defendant denies that its policies and practices violated the FMLA at all, and even if it did, the Defendant maintains that it acted in good faith. Given the stage of the litigation and Defendant's arguments, the class members were not certain to achieve the maximum recovery. The class members might have lost at the liability stage and recovered nothing; or the Defendant might have proved that it operated in good faith, and the class members would only have received actual damages. Given these possible outcomes, the class members had perhaps a fifty percent chance of achieving maximum recovery; and thus, receiving a multiplier of either 1.5 or 1.75 the actual damages is fair recompense to the Plaintiff and the class members, given the strength of the case. Finally, the remaining considerations also support the settlement: no class member voiced any opposition to the settlement, and competent and experienced counsel opined that the settlement represents a

fair outcome for the class members. (*See* ECF No. 85; *see also* Mot. for Settlement ¶ 29.) For all these reasons, the Court agrees that the Settlement Agreement is fair, reasonable, and adequate.

C.  **Attorney's Fees and Additional Payment to the Named Plaintiff**

1.  *Attorney's Fees*

Under Rule 23(h), the Court "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, the parties have agreed that the Defendant will pay $72,330.78 to the Class Counsel, a payment entirely separate from those made to class members. Courts favor the settlement of attorney's fees by the parties. *Cf. Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee."), *and Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 822 (7th Cir. 2009) (describing an offer of judgment exclusive of attorney fees as "a regrettable situation," because it naturally led to more litigation). Indeed, some courts find such agreements presumptively reasonable. *See Goodyear v. Estes Exp. Lines, Inc.*, No. 1:06CV863-JDT-TAB, 2008 WL 687130, at *4 (S.D. Ind. Mar. 10, 2008). Nevertheless, the Court must evaluate this amount to determine its reasonableness.

In the Memorandum in Support of the Motion for Attorney Fees and Costs [ECF No. 76], counsel primarily cites common fund cases to support the reasonableness of this award, and argues for a percentage-based analysis of the proposed amount. While the settlement agreement here is not a common fund, the payment of attorney's fees is most often challenged in such cases. As this payment would withstand the higher scrutiny applied to such allocations, it is reasonable here. The payment of $72,330.78 represents 30.4% of the total amount;

approximately 30% is well within the normal amounts in common fund cases where the total payments, as here, are less than a million dollars. *See, e.g., Donovan v. St. Joseph Cty. Sheriff*, Case No.: 3:11-cv-133, 2015 WL 7738035, at *5 (N.D. Ind. Dec. 1, 2015); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-CV-4462, 2015 WL 1399367, at *3 (N.D. Ill. Mar. 23, 2015) (first citing *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 957 (7th Cir. 2013), then citing Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993–2008*, 7 J. Empirical Legal Studies 248 (2010)).

Further supporting the reasonableness of this payment of attorney's fees are the facts that: (i) the payment actually represents a discount on what counsel would actually have billed the Plaintiff [ECF No. 76-1]; thus, under the lodestar method, the payment is also reasonable, *see Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014), and *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011); (ii) the class in this settlement receives a very favorable amount compared to the potential damages, *see Chapman v. Dowman, Heintz, Boscia & Vician, P.C.*, No. 2:15-CV-120 JD, 2016 WL 3247872, at *4 (N.D. Ind. June 13, 2016) (considering the favorable settlement relative to maximum potential recovery as part of approving attorney's fees); (iii) the payment aligns with the contingency fee agreement; (iv) no class member objected to the payment; and most importantly, (v) the payment is made separately, and therefore is not at the direct expense of the class members, unlike the usual common fund. For all these reasons, the Court finds that the amount to be paid as attorney's fees is reasonable.

### 2. *Additional Payment to the Named Plaintiff*

Class Counsel requests that the Court award the Named Plaintiff, Gretchen Carrel, an additional payment of $2,000. "Incentive awards are justified when necessary to induce

individuals to become named representatives." *Synthroid*, 264 F.3d at 722; *see also Cook v. Niedart*, 142 F.3d 1004, 1016 (7th Cir. 1998).

The Named Plaintiff has been involved since before the initial Complaint was filed in state court, beginning in March 2016. She has spoken by telephone with the counsel approximately 50 times, has met with counsel approximately 6 times, and referred any other class members to counsel. She is committed to assisting with the necessary payments in the settlement agreement. In total, she has spent between 50 and 70 hours on this case. Additionally, because the payment is separate from any payment made to the rest of the class, it does not reduce any class member's recovery; and no class member objected. Given the contributions of the Named Plaintiff, the Court finds that the additional $2,000 payment is appropriate.

## CONCLUSION

For the reasons set forth above, the Court GRANTS the Motion for Final Order of Approval [ECF No. 87] and GRANTS the Motion for Attorney Fees and Costs on FMLA Claim [ECF No. 75]. A Final Approval Order will be issued consistent with this Opinion and Order and with the Settlement Agreement. The parties are DIRECTED to file a final report within sixty days after completion of the payment process.

SO ORDERED on July 27, 2018.

s/ Theresa L. Springmann  
CHIEF JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT